## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>v.<br><br>WIPFLI, LLP,<br><br>                    Defendant. | Civil No. 12-1531 (JRT/JJK)<br><br><br>**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS** |

Joseph A. Nilan, **GREGERSON ROSOW JOHNSON & NILAN, LTD**, 650 Third Avenue South, Suite 1600, Minneapolis, MN  55402, for plaintiff.

Lawrence M. Shapiro and Mark L. Johnson, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN  55402, for defendant.

Plaintiff North American Specialty Insurance Company ("NAS") brought this action against Crowley Company Inc. ("Crowley"), a construction company to which it provided bonds, and Crowley's accountant, Wipfli, LLP ("Wipfli").  NAS provided more than $8 million in bonds for Crowley after reviewing Independent Auditor's Reports created by Wipfli.  When Crowley failed to meet its obligations on construction projects bonded by NAS, NAS incurred substantial losses responding to claims relating to Crowley's unfinished projects.  NAS alleges that Crowley's financial statements overstated the company's well-being, and that Wipfli's audits failed to detect the overstatements.

NAS brought a claim for indemnification against Crowley[1] and claims for professional negligence and negligent misrepresentation against Wipfli. Wipfli has moved to dismiss the claims against it. Wipfli contends that (1) under Minnesota law an accountant cannot be liable to a non-client for simple professional negligence and; (2) NAS has failed to plead negligent misrepresentation with the required particularity. Because Minnesota law does not allow a non-client to bring a typical negligence claim against an accountant, the Court will grant Wipfli's motion to dismiss NAS's professional negligence claim. The Court will deny Wipfli's motion to dismiss NAS's negligent misrepresentation claim, finding that the allegations are pled with sufficient detail.

## BACKGROUND[2]

NAS originally filed its complaint on June 26, 2012. (Compl., June 26, 2012, Docket No. 1.) After Wipfli moved to dismiss on grounds nearly identical to those raised by the present motion, (Mot. to Dismiss, July 30, 2012, Docket No. 5), NAS amended its complaint, (Am. Compl., Oct. 16, 2012, Docket No. 33).

Crowley is a Minnesota construction company that provides perimeter security fencing and barriers. (*Id.* ¶¶ 3, 12.) NAS is a New Hampshire corporation that provides statutory performance and payment bonds for contractors. (*Id.* ¶¶ 1, 8.) These bonds

---

[1] The claims against Crowley and Crowley's owners were dismissed without prejudice earlier in the action pursuant to the parties' stipulation. (*See* Judgment, Nov. 11, 2012, Docket No. 43.)

[2] The facts are drawn from the amended complaint and taken as true. *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001) (per curiam).

require it to pay valid claims of unpaid laborers, subcontractors, and suppliers when the principal (here, Crowley) defaults on its obligations.  (*Id.* ¶ 9.)  The bonds also require NAS to pay the costs of completing projects when the principal fails to perform.  (*Id.* ¶ 10.)

Wipfli provided accounting and auditing services for Crowley.  (*Id.* ¶¶ 2, 11, 15.)  Wipfli issued two "Independent Auditor's Reports" that are material to this action.  (*Id.* ¶¶ 15, 16, 19.)  On February 22, 2010, Wipfli issued a report based on Crowley's balance sheets and other financial papers as of December 31, 2009.  (*Id.* ¶ 16.)  This report stated that Wipfli had conducted its audits in accordance with generally accepted standards, which require Wipfli to "obtain reasonable assurance about whether the financial statements are free of material misstatement."  (*Id.*)  The report concluded that "[i]n our opinion, the financial statements . . . present fairly, in all material respects, the financial position of [Crowley] as of December 31, 2009."  (*Id.*)  On March 8, 2011, Wipfli issued a second report with the same conclusion based on Crowley's financial statements as of December 31, 2011.  (*Id.* ¶ 19.)  NAS relied on Wipfli's reports in deciding to provide over $8 million in bonds assuring Crowley's performance.  (*Id.* ¶¶ 18, 21.)  NAS alleges that "Wipfli was aware that NAS would receive copies of the 2010 and 2011 independent auditor's reports and that it would make a determination to issue bonds to Crowley based on those reports."  (*Id.* ¶ 22.)

NAS has received a number of claims from "unpaid suppliers, subcontractors, and bond obligees" in relation to the bonds it issued to Crowley.  (*Id.* ¶ 23.)  NAS forecasts that its losses will amount to $2 million.  (*Id.*)  NAS subsequently hired a forensic

accountant to investigate Crowley's records and the accountant discovered "manipulation of internal financial records which grossly overstated the financial position of Crowley." (*Id.* ¶ 24.) NAS alleges that the manipulation led to inaccurate reports of "accounts payable and assets" and that Wipfli failed to detect that the "accounts receivable" and "accounts payable" had been manipulated. (*Id.* ¶¶ 24-26.)

NAS alleges that Wipfli's reports contained false information because they stated that Crowley's financial records fairly stated Crowley's financial position. (*Id.* ¶ 27.) NAS further alleges that "[h]ad Wipfli acted with the standard of care and accounting principles that it stated it was complying with in its Independent Auditor's Reports . . . it would have detected the misrepresentations and inaccuracies found in Crowley's internal records and reported them accordingly." (*Id.* ¶ 28.) More specifically, NAS alleges that "Wipfli . . . negligently fail[ed] to adhere to and carry out accepted professional standards; negligently fail[ed] to adequately perform test samples of accounts payable and assets during the course of its audit review; and . . . negligently fail[ed] to ascertain and discover that, Crowley's financial records were fraudulently manipulated and misstated." (*Id.* ¶ 31.)

## ANALYSIS

### I. STANDARD OF REVIEW

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss brought pursuant to Rule 12(b)(6), but "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must plead facts that render a defendant's liability plausible – not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a complaint on a motion to dismiss the Court takes as true all allegations in the complaint, which it construes in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010).

**II.   PROFESSIONAL NEGLIGENCE**

Wipfli moves to dismiss NAS's professional negligence claim on the grounds that a non-client cannot sue an accountant for professional negligence under Minnesota law. This district has previously concluded that "under Minnesota law, a non-client . . . appears to be limited to bringing claims of negligent or fraudulent misrepresentation against an accountant." *Associated Commercial Fin., Inc. v. Brady Martz & Assocs., P.C.*, Civ. No. 04-5111, 2006 WL 3406762, at *1 (D. Minn. Nov. 27, 2006). The Court reaches the same conclusion and will grant this portion of Wipfli's motion to dismiss.

The elements of a typical professional negligence (i.e., malpractice) claim against an accountant are duty, breach, factual and proximate causation, and damages. *See Vernon J. Rockler & Co. v. Glickman, Isenberg, Lurie & Co.*, 273 N.W.2d 647, 650 (Minn. 1978). Duty is commonly established by the existence of an accountant-client relationship. *Id.* The parties seem to agree that in order for a non-client like NAS to

prevail, its claim must satisfy the rule set forth in § 552 of the Restatement (Second) of Torts (1977), which provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

NAS contends that § 552 establishes limited circumstances in which an accountant owes a duty to a non-client and may therefore face liability on an ordinary negligence claim. NAS's approach is plausible, and this district seemed to apply it in a previous case when it denied a motion to dismiss negligence and malpractice claims by relying on § 552. *See TCF Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F. Supp. 1408, 1417-19 & 1417 n.6 (D. Minn. 1988). The greater weight of authority, however, indicates that § 552 does not merely define the "duty" element of a typical negligence claim brought by a non-client against an accountant. Rather, § 552 provides a cause of action for negligent misrepresentation. *See Smith v. Brutger Cos.*, 569 N.W.2d 408, 413-14 (Minn. 1997) ("This court adopted negligent misrepresentation involving pecuniary loss as defined in

Restatement (Second) of Torts § 552 . . . ."); *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.3 (Minn. 1986).

The Court recognizes that some cases applying § 552 have referred to "malpractice" or simply "negligence."  *See, e.g.*, *Bonhiver*, 248 N.W.2d 291, 301 (Minn. 1976); *Mahoney & Walling Prof'l Ass'n v. Oberweis Sec., Inc.*, No. C3-90-348, 1990 WL 89428, at *1 (Minn. Ct. App. July 3, 1990).  But a closer reading of the cases that refer to "malpractice" or "negligence" reveals that they are, in fact, addressing negligent misrepresentation.  *See, e.g.*, *Bonhiver*, 248 N.W.2d at 301 ("Under what circumstances can accountants be held liable to third parties for negligent misrepresentation?"); *Mahoney*, 1990 WL 89428, at *2 ("[Plaintiff] does not meet section 552's definition of negligent misrepresentation.").[3]

The Court has located no authority under Minnesota law explicitly authorizing a non-client to bring a typical negligence claim against an accountant.  Thus, the Court grants Wipfli's motion to dismiss NAS's professional negligence claim.

### III.   NEGLIGENT MISREPRESENTATION

The Court must next determine whether NAS's negligent misrepresentation claim is pled with sufficient detail.  Negligent misrepresentation claims are considered a species of fraud and are subject to heightened pleading requirements.  *See Hardin Cnty. Sav.*

---

[3] The potential for confusing terminology arises because there is a substantial overlap between negligent misrepresentation and negligence claims.  An element of negligent misrepresentation is that the defendant "fails to exercise reasonable care or competence," *see* § 552(1), which is similar, if not identical, to the "breach" element of a typical negligence claim, *see Vernon J. Rockler & Co.*, 273 N.W.2d at 650.

*Bank v. Housing & Redevelopment Auth.*, 821 N.W.2d 184, 191 (Minn. 2012); Fed. R. Civ. P. 9(b). Such claims require "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). "[A] plaintiff must specifically allege the circumstances constituting fraud, including such matters as the time, place and contents of false representations . . . ." *Id.* (citation and internal quotation marks omitted). In other words, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). At the same time, the Court "must interpret the requirements of Rule 9(b) in harmony with the principles of notice pleading." *Abels*, 259 F.3d at 920 (internal quotation marks omitted).

Under Minnesota law, the elements of negligent misrepresentation are (1) the defendant acts in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) the defendant supplies false information to another person to guide that person in their own business transactions; (3) the defendant fails to exercise reasonable care or competence in obtaining the information or communicating the information; (4) the plaintiff relies on the information; (5) the plaintiff's reliance is justified; and (6) the plaintiff is financially harmed by relying on the information. *See Hardin*, 821 N.W.2d at 192 (quoting 4 Minn.

Dist. Judges Ass'n, Minnesota Practice – Jury Instruction Guides, Civil, CIVJIG 57.20 (5th ed. 2006)).[4]

Wipfli contends that NAS's complaint falls short of the requirements of Rule 9(b) because (1) NAS has not identified with sufficient particularity a false statement upon which it relied; and (2) NAS has not stated with particularity how Wipfli failed to exercise reasonable care in providing false information.  While it is a close question, the Court finds that NAS's complaint is adequate.

As to the identification of a false statement, Wipfli asserts that NAS failed to provide any particularized information about what exactly was misstated in Crowley's financial records.  Yet the focus of NAS's negligent misrepresentation claim is false statements that were made by Wipfli, not by Crowley.  NAS has identified the portions of Wipfli's Independent Auditor's Reports that it alleges are false. (*See* Am. Compl. ¶¶ 16, 19, 27-28 (identifying assertions in the Wipfly reports).)  Thus, NAS has informed Wipfli of the "time place, and contents" of the alleged misrepresentations.  *Abels*, 259 F.3d at 920.  NAS has also clearly identified the "who" (Wipfli), "what" (wrongly reported that it had complied with generally accepted auditing standards and that Crowley's financial statements fairly represented Crowley's financial condition), "where" (in the text of its

---

[4] The elements stated by the Minnesota Supreme Court in *Hardin* are derived from § 552(1).  The parties do not discuss how the limitations set forth in § 552(2) function in a negligent misrepresentation claim and Wipfli has not urged that the Court dismiss NAS's claim for any reason relating to § 552(2).  The Court therefore need not consider whether NAS was required to plead that the limitations in § 552(2) are satisfied and if so, whether NAS did so sufficiently.

Independent Auditor's Reports), and "when" (February 22, 2010 and March 8, 2011) of the alleged misrepresentation. *United States ex rel. Joshi*, 441 F.3d at 556.

On the other hand, the "how" requires somewhat more attention. NAS may not simply assert that Wipfli failed to act with the standard of care required. *See Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) ("[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)].") (internal quotation marks omitted)). Rather, in order to satisfy Rule 9(b), NAS must provide details regarding how Wipfli acted negligently. *Cf. Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983) ("[The complaint's] defect is the complete absence of any disclosure of the manner in which, in establishing reserves for bad debts in the financial statements relied upon, the defendants knowingly departed from reasonable accounting practices.").

Certain portions of NAS's complaint are too general, standing alone, to satisfy Rule 9(b). For example, NAS alleges that "[h]ad Wipfli acted with the standard of care and accounting principles that it stated it was complying with . . . it would have detected the misrepresentations." (Am. Compl. ¶ 28.) Other portions of the complaint provide more detail, however. For example, NAS alleges that "Wipfli . . . failed to detect that Crowley's accounts receivable [and accounts payable] had been manipulated," (*id.* ¶¶ 25-26), and that Wipfli departed from the standard of care by "negligently failing to adhere to and carry out accepted professional standards; **negligently failing to adequately perform test samples of accounts payable and assets** during the course of its audit

review; and by negligently failing to ascertain and discover that, Crowley's financial records were fraudulently manipulated and misstated," (*id.* ¶ 31 (emphasis added).)[5]

"[I]nterpret[ing] the requirements of Rule 9(b) in harmony with the principles of notice pleading," the Court finds that NAS's complaint sufficiently puts Wipfli on notice of the nature of NAS's allegation and enables Wipfli to respond to the potentially damaging allegations. *See Abels*, 259 F.3d at 920 (internal quotation marks omitted). NAS alleges that Wipfli did not conduct the tests of accounts receivable and payable that a reasonable accountant would have conducted. This is a potentially damaging allegation, but it is specific enough that Wipfli can defend itself effectively at an early stage of the litigation if the allegation is inaccurate. Thus, the Court denies Wipfli's motion to dismiss NAS's negligent misrepresentation claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Wipfli's Motion to Dismiss [Docket No. 35] is **GRANTED in part** and **DENIED in part** as follows:

1.  Wipfli's motion to dismiss NAS's professional negligence claim (Count I) is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.

---

[5] Paragraph 31 is within the section of the complaint alleging professional negligence, but the Court may analyze the complaint as a whole in ruling on a motion to dismiss. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.").

2. Wipfli's motion to dismiss NAS's negligent misrepresentation claim (Count II) is **DENIED**.

DATED: July 26, 2013                          ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                        United States District Judge